*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* OLMO RIVERA/OLMO-RIVERA, Minors.

UNPUBLISHED
August 07, 2026
1:59 PM

No. 379906
Wayne Circuit Court
Family Division
LC No. 2024-000907-NA

Before: ACKERMAN, P.J., and BAZZI and LIEVENSE, JJ.

PER CURIAM.

Respondent-father appeals as of right the order terminating his parental rights to his minor children, AOR I, AOR II, and DO (collectively, the children).[1] The trial court found statutory grounds to terminate respondent-father's rights under MCL 712A.19b(3)(a)(*ii*) (parent has deserted the child for 91 or more days), (c)(*i*) (conditions leading to adjudication continue to exist), and (j) (reasonable likelihood the children would be harmed if returned), and found that termination was in the children's best interests. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In June 2024, petitioner, the Department of Health and Human Services (DHHS), petitioned to remove the children from the care of respondent-mother and respondent-father.[2] The petition alleged that the children were living with respondent-mother and her cohabitating partner and they physically abused the children on multiple occasions. DHHS asserted that removal was necessary because of "domestic violence, neglect, physical abuse and criminal history." Given the physical abuse, a safety plan was implemented for the children to reside with their maternal aunt. As for respondent-father, DHHS alleged that he had not seen the children in over a year, abandoned

---

[1] Two of the minor children at issue in this case, AOR I and AOR II, share identical initials. They are distinguished in this opinion by the roman numeral following their initials.

[2] Respondent-mother's parental rights to the children were also terminated as a result of these proceedings, but she is not a party to this appeal.

them, and failed to support and protect them. Following a preliminary hearing, the trial court entered an order authorizing the petition and placing the children under the care and supervision of DHHS.

While respondent-father was present at the initial preliminary hearing, he was absent for all subsequent proceedings and DHHS was only able to contact him once by telephone. Following a bench trial in October 2024, the trial court assumed jurisdiction over the children pursuant to MCL 712A.2(b)(1) (parent neglects or refuses to provide proper or necessary support) and (2) (unfit home by reason of neglect, drunkenness, criminality, or depravity). At a permanency-planning hearing in January 2025, the trial court approved a parent-agency treatment plan (PATP) for respondent-father. His PATP included completing a psychological evaluation; attending individual therapy, family therapy, and parenting classes; attending supervised parenting times; obtaining and maintaining suitable housing and income; and maintaining contact with the foster-care worker. However, over the course of nine months and several dispositional review hearings, respondent-father remained absent and did not make any progress toward compliance with his PATP.

In October 2025, DHHS filed a supplemental petition requesting termination of respondents' parental rights. The trial court held the termination hearing in February 2026. At the time of the hearing, the children were placed in a licensed foster home and no longer living with their maternal aunt.[3] Mercedes Thomas, the family's foster-care worker, testified regarding respondent-father's failure to engage in services, the impact of his absence on the children, and the children's preferences with respect to their permanency plans. The trial court found statutory grounds to terminate respondent-father's parental rights under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), and (j) by clear and convincing evidence, and thereafter found that termination was in the children's best interests by a preponderance of the evidence. In making this determination, the trial court reasoned as follows:

> This Court also considers [MCL 712A.19b(5)], the best interest of the children. The Court finds by a preponderance of the evidence and based on the record as a whole, that terminating the parental rights of [respondents] to the children . . . is in each child's best interest. The Court notes the parents['] lack of any effort towards the [PATP], they demonstrate as neglectful parents, and they haven't addressed the issues that brought the children into care, which continue to pose a risk of harm if the children were ever returned.
>
> . . . [The children] don't want anything to do with their father. I note that [DO] wants guardianship with the grandfather, but she's also interested in [another planned permanent living arrangement (APPLA)]. [DO] is seventeen years old,

---

[3] During the course of the proceedings, DHHS discovered that the maternal aunt was neglecting the children and housing them in a separate residence from the one that DHHS initially approved. The children were then moved into a licensed foster home because DHHS could not identify another suitable relative placement. However, the children expressed interest in residing with their maternal grandfather, which DHHS was exploring as a potential future placement.

will be eighteen in a couple months. [AOR I and AOR II] are sixteen. [AOR I] has special needs. And both [AOR I and AOR II] have expressed interest in guardianship with grandfather. Termination of parental rights provides the children with a path towards realizing permanency, stability and finality. The parents have done nothing to regain custody of them. This lack of effort and apathy continues to traumatize the children. They've been traumatized, as one of the reasons this case came to the Court's attention, was neglect and abuse, and they're still being neglected and abused by these parents. And the parents['] parental rights should be terminated to give them [sic] children the best chance at good, positive growth. The parents['] parental rights are terminated. . . . I note that adoption is not the permanency goal in this, but termination of parental rights gives the children the best chances at success in their permanency goals and towards [a] chance for finality and permanency.

The trial court therefore terminated respondent-father's parental rights and ordered that DO have a permanency goal of APPLA, while AOR I and AOR II have concurrent goals of APPLA and guardianship. This appeal followed.

## II. BEST INTERESTS

Respondent-father contends the trial court erred when it found that termination of his parental rights was in the children's best interests and that the order terminating his rights should be reversed. We disagree.[4]

Parental rights to a child must be terminated when (1) petitioner establishes by clear and convincing evidence a statutory ground for termination and (2) the trial court finds from a preponderance of the evidence that termination of parental rights is in the child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). A trial court's best-interest determination is reviewed for clear error. *Id*. "A finding is clearly erroneous [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010) (quotation marks and citation omitted; alteration in original). This Court gives "due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

At the best-interest stage of the proceedings, the focus is on the child, and not the parent. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). This Court has articulated several considerations relevant to this determination:

In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party. [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home, are all factors

---

[4] On appeal, respondent-father does not contest the trial court's determination that statutory grounds existed to terminate his parental rights under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), and (j).

for the court to consider when deciding whether termination is in the best interests of the child. The trial court may also consider the child's age, inappropriate parenting techniques, and continued involvement in domestic violence. It may further consider visitation history, the parent's engaging in questionable relationships, the parent's compliance with treatment plans, the child's well-being in care, and the possibility of adoption. [*In re Sanborn*, 337 Mich App 252, 276-277; 976 NW2d 44 (2021) (quotation marks and citations omitted; alteration in original).]

The trial court did not clearly err when it determined termination was in the children's best interests. Thomas testified that despite her efforts to contact respondent-father, he remained absent. He did not review his PATP with Thomas, participate in any element of his PATP, or come forward during the case to plan for the children. He did not attend any of the 68 visitation opportunities with the children or otherwise contact them during the pendency of the case. Thomas asked the children about their respective relationships with respondent-father, and they all indicated that they did not "want anything to do with [their] dad," and "didn't care" whether his parental rights were terminated. Although adoption was not the recommended permanency plan, Thomas maintained that termination was in the children's best interests because respondent-father did not make any efforts toward reunification. Even if respondent-father was given more time to participate in the PATP, Thomas did not believe there would be any difference in his compliance, nor would it be possible to repair the familial bond given respondent-father's lengthy absence. DO and AOR I also had medical needs that would potentially require treatment while in care, and termination would allow DHHS to seek treatment without having to petition the trial court to obtain parental consent. Accordingly, termination would provide the children with stability and finality. The trial court's best-interest determination was adequately supported by the foregoing evidence.

Respondent-father primarily contends that a guardianship presented a better alternative to termination given the respective ages of the children. It is true that appointment of a guardian can be an alternative to termination. See *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014) (noting that "the appointment of a guardian is done in an effort to avoid termination of parental rights"). However, the fact that the children's permanency goals included a guardianship or APPLA did not foreclose the trial court from terminating respondent-father's parental rights upon the proper showing of statutory grounds and best interests. See MCL 712A.19c (addressing a trial court's ability to appoint a guardian or review other permanent-placement options following the termination of parental rights). In this case, the trial court appropriately considered whether termination was proper given the permanency goals, concluding that it gave the children the best chance at finality, permanency, and success in pursuing their goals. This decision was supported by the evidence detailed above.

Additionally, respondent-father asserts that "the Children didn't want termination of [his] parental rights." Although it may be technically true the children did not specifically state they *wanted* respondent-father's parental rights terminated, he ignores the concerning fact that the children did not care whether his rights were terminated. Thomas testified the children "didn't care" whether respondent-father's parental rights were terminated and did not "want anything to do with [their] dad." The children did not express any interest in maintaining a relationship with respondent-father or reunifying with him. In short, respondent-father's attempt to recharacterize

-4-

the children's indifference as active opposition to the termination of his parental rights is unsupported by the record.

Respondent-father also contends he was not provided with sufficient time to comply with his PATP. Notably, Thomas testified that she did not believe respondent-father would demonstrate compliance with services if given additional time. Respondent-father's argument is further undercut by the evidence that he was absent and refused to engage in any services. Although respondent-father attended the initial preliminary hearing, he was absent from every subsequent hearing. Thomas testified that because of respondent-father's failure to provide the minimal information necessary to locate or contact him, DHHS was unable to assist him. Thomas followed the absent-parent protocol, sent letters, and completed various search inquiries to determine respondent-father's whereabouts, without success. Thomas repeated her attempts to reach respondent-father at least twice a month. Nonetheless, respondent-father remained absent and made no progress on his PATP. Given the evidence of respondent-father's near-total absence and lack of participation in the proceedings, his assertion that he was not given sufficient time to complete his PATP is unconvincing.

Finally, respondent-father suggests the trial court erred because there was no evidence the children were at risk of harm in his care. The best-interest analysis requires the trial court to "weigh all the evidence available." *White*, 303 Mich App at 713. During the adjudication trial, Children's Protective Services (CPS) investigator Kenya Brown testified the children were physically abused while living with respondent-mother and her partner. Brown was only able to contact respondent-father once by phone and thereafter determined he was unable to care for the children because he was in between houses and had an open CPS investigation against him involving other children. Respondent-father also indicated "[h]e had not seen his children in over two years because [respondent-mother's partner] had threatened him." Paired with his subsequent failure to engage in services, the trial court was justified in finding the children would be at risk of harm if returned to respondent-father's care given his failure to protect the children, lack of suitable housing, and prior CPS involvement.

Affirmed.

/s/ Matthew S. Ackerman
/s/ Mariam S. Bazzi
/s/ Andrew J. Lievense